IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2025

## STATE OF TENNESSEE v. DANA KELLY TEASLEY

**Appeal from the Criminal Court for Polk County**
**No. 23-CR-46      Sandra N.C. Donaghy, Judge**

_____

**No. E2024-00809-CCA-R3-CD**

_____

In 2024, the Defendant, Dana Kelly Teasley, pleaded guilty to eighteen counts of theft and fraud-related charges, and the trial court sentenced her to an effective sentence of twelve years of probation. On appeal, the Defendant asserts that the trial court erred when it imposed consecutive sentences. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and MATTHEW J. WILSON, JJ., joined.

Jessica F. Butler, Assistant District Public Defender – Appellate Division, Franklin, Tennessee (on appeal); and Steven Morgan, Assistant District Public Defender, Cleveland, Tennessee (at plea hearing), for the appellant, Dana Kelly Teasley.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Sheri Lynn Tayloe, District Attorney General; and Joseph V. Hoffer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's role as treasurer for two local non-profit organizations. Doing business as the organizations' treasurer, the Defendant wrote checks to herself, forging the signatures of the president of one of the non-profit organizations. On behalf of another non-profit, the Defendant obtained a debit card and used it for personal expenses. The losses incurred by both non-profits totaled $14,000. For these offenses the Defendant was indicted for: one count of theft of property over $10,000; one count of fraudulent use of a credit card over $2,500; two counts of theft of property over

$2,500; and fourteen counts of forgery. The plea agreement detailed that the Defendant would be sentenced at the trial court's discretion.

## A. Guilty Plea

The Defendant pleaded guilty to all the indicted charges. The State recited the following facts as the basis for the plea:

> [T]here was a charitable organization that was called the Ocoee River-Jam Festival. [T]he purpose of that . . . festival is an organization to raise funds that were then given to the Polk County Boys and Girls Club, and other charities[.]
>
> [The Defendant] was a person who was connected with that particular organization. She had access to the checkbook, and the debit card, because she was the treasurer of that [organization]. . . . .
>
> Julie Johnson, who was another member of that organization, filed affidavits of forgery with the bank, received copies of the [fraudulent] check. And [she] found out that [the Defendant] had been taking the checks that were designed for and used by this charity, and writing out checks to cash, cashing them, and then using them for personal expenses.
>
> . . . . [T]he general amount . . . as far as that charity was concerned was over ten thousand dollars ($10,000) worth of losses to the organization.
>
> As a result of that, [], this year, when summer comes there's no money to sponsor the Ocoee River-Jam. As a result of that, there will not be an Ocoee River-Jam, there will not be money raised for the charity, such as the Boys and Girls Club. They're just not able to go forward, they don't have the money to support the event like they did in years in the past.
>
> Then, [], there was another non[-]profit organization called Friends of the Ocoee State Hiwassee Parks, once again, [the Defendant] was in the position as treasurer in that organization. [The Defendant] began to write checks, and got a debit card for the account without approval of the board. And starting in March, [the Defendant] made transactions that were not approved by the Board of Directors. They were on both debit cards and checks, and they were in the amount of exceeding four thousand, five hundred ($4,500) at the time.

The trial court and defense counsel inquired as to whether the Defendant understood that the trial court would be determining her sentences. The trial court inquired as to whether she understood the sentencing ranges and wished to enter her pleas. The trial court accepted the Defendant's guilty pleas.

## B. Sentencing

The trial court held a sentencing hearing during which it admitted the presentence report into the record. The presentence report indicated that the Defendant had previously been convicted of two DUIs. The following evidence was presented at the hearing: Julie Johnson testified that she was the manager of Adventures Unlimited, a white-water rafting outfitter on the Ocoee River, and that she was involved in a charity called the Ocoee River-Jam, which was a non-profit she had founded with the Defendant and several others. The Defendant served as the treasurer, and the organization was designed to serve as a fundraiser for the Boys and Girls Club in the area and another non-profit youth kayaking initiative. Ms. Johnson estimated that the charity had donated upwards of $35,000 to the Boys and Girls Club. Ms. Johnson recalled that, in 2021, the organization received some grants and felt a lot of momentum until she learned that the money was "gone."

Ms. Johnson discovered the financial crimes when she contacted the Defendant to ask her to sign some checks for a donation, which required both of their signatures, and the Defendant did not return her calls. Instead, Ms. Johnson opted to get a cashier's check from the bank to make the donation. She planned to write checks totaling $12,000, but when she arrived at the bank, she learned that there was no money in the bank account. The checks that had been written, wiping out the account, had the Defendant's signature and Ms. Johnson's forged signature on them. As a result of this financial loss, Ms. Johnson planned to dissolve the organization and donate the remaining funds. Ms. Johnson turned down remaining grant money that was due to the organization, totaling $15,000, because she was unsure of how to go forward with it.

At the conclusion of the hearing, the trial court made the following statement:

> . . . .
>
> So, this [D]efendant has fourteen (14) counts of forgery, where I see now she is a Range I offender, so on each [count] she faces a sentence from one to two years. On the class C felony theft, she faces a punishment from three to six years. On each of the class D felonies, two of them being outright theft, one being fraudulent use of a credit card, she faces a sentence from two to four years on each.

3

. . . .

There were a total of sixty transactions . . . [and] well over a hundred and thirty separate acts of theft, where each time she committed a theft, she had to form individual intent.

And I agree with the State that when you steal from a 501(c)(3) which is a nonprofit organization that's just trying to do good that makes [the crime] even worse. Because [this is] a board led group that perhaps does not have the oversight and the supervision that the corporate world would. And as treasurer, [the Defendant] had direct access to the money, and she committed these thefts over and over, and over again, during this period of time.

The trial court noted the Defendant's two DUI convictions, and the evidence that the Defendant had engaged in unauthorized transactions totaling $3,712.68 to the Friends of the Hiwassee Ocoee Rivers organization, and $18,243.92 to the Ocoee River-Jam organization. The trial court noted that many of the charges were for "entertainment," including retail and restaurants. The trial court noted that the Defendant's actions had been a breach of trust based on her position within the organizations.

The trial court further noted that the Defendant had violated the trust of the organizations' members, putting their jobs at risk and impacting their professional lives. The trial court addressed the principles of sentencing and concluded that, based on the Defendant's pattern of crime in this situation and her prior DUIs, confinement was necessary to protect society. The trial court also considered whether there was a need for confinement to deter future criminal conduct of this kind, noting that other individuals needed to be deterred from committing embezzlement of charitable funds.

The trial court noted that the Defendant was a Range I, standard offender. In considering enhancement of the Defendant's sentence, the trial court applied enhancement factor (14), that the Defendant abused a position of private trust as the elected treasurer of the 501(c)(3). *See* T.C.A. § 40-35-114(4) (2019).

Addressing consecutive sentencing, the trial court stated that the Defendant's repeated pattern of criminal behavior, totaling approximately 120 separate instances of theft from the two organizations, justified the imposition of partially consecutive sentences. T.C.A. § 40-35-115(b)(2) (2019). The trial court ordered a total restitution amount of $21,900.

4

Based on these considerations, the trial court imposed a five-year sentence for the Class C felony theft conviction (Count 1), and consecutive two-year sentences for the remaining three Class D felony theft convictions (Counts 2, 3, and 4). For the fourteen forgery convictions (Counts 5 through 18), the trial court imposed concurrent one-year sentences for each, to be served consecutively to the additional four convictions, for a total effective sentence of twelve years. The sentences were all suspended to probation, and the Defendant was required to pay $250 of restitution per month. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant argues that the trial court did not impose these sentences with "an eye towards or any consideration of the purposes and principles of sentencing." She further asserts that the trial court erred when it imposed consecutive sentencing. She argues that, "although [she] had no prior criminal history and several health issues," the trial court imposed consecutive sentences which amounted to an abuse of discretion. The State responds that the trial court acted within its discretion when it imposed the Defendant's within-range probationary sentence, and in its decision to impose consecutive sentencing. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

The misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from a trial court's sentencing decision. *Id.* A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* So long as there are other reasons consistent

5

with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

We conclude that the trial court properly sentenced the Defendant. The trial court carefully considered the relevant principles and sentenced the Defendant to within-range sentences for each of her crimes. The trial court applied enhancement factor (14), that the Defendant had abused a position of private trust within two non-profit organizations. T.C.A. § 40-35-114(14) (2019). This factor was supported by the evidence presented at the sentencing hearing and contained in the presentence report. As such, the appropriate application of enhancement factor supports the trial court's sentencing decision. The Defendant, being granted a probationary sentence, is free to address her health issues and employment needs. The Defendant is not entitled to relief as to this issue.

As for consecutive sentencing, where a defendant is convicted of one or more offenses, the trial court has discretion in determining whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a). "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the categories in Code section 40-35-115(b). This court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Pollard*, 432 S.W.3d at 861.

When imposing consecutive sentences, the court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the

seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. §§ 40-35-102(1), -103(2), -103(4); *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705).

Here, the trial court found that partially consecutive sentencing was proper, pursuant to section 40-35-115(b)(2). Our supreme court recently held that a trial court should consider the following non-exclusive factors when finding that a defendant has an extensive record of criminal activity:

(1) The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;
(2) The time span over which the criminal activity occurred;
(3) The frequency of criminal activity within that time span;
(4) The geographic span over which the criminal activity occurred;
(5) Multiplicity of victims of the criminal activity; and
(6) Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*State v. Perry*, 656 S.W.3d 116, 129 (Tenn. 2022) (footnotes omitted). In this case, the trial court applied these factors, noting that the Defendant had numerous convictions including multiple DUIs and numerous instances of theft and fraud, which made imposition of consecutive sentence appropriate. Upon review, the record supports the trial court's finding that the Defendant's record of criminal activity was extensive. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

s/ ***Robert W. Wedemeyer***

ROBERT W. WEDEMEYER, JUDGE

7